PEARL KANIPE, Employee, Plaintiff v. LANE UPHOLSTERY, HICKORY TAVERN FUR-
    NITURE CO., Employer, SELF-INSURED (Alexsis Risk Management Services),
    Administrator, Defendants

No. COA99-1425

(Filed 29 December 2000)

**1. Workers' Compensation— employer's right to control
    medical treatment—once accept employee's claim as
    compensable**

The full Industrial Commission did not err in a workers' com-
pensation case by its conclusion that defendant employer had the
right to control plaintiff employee's medical treatment because an
employer's right to direct medical treatment, including the right
to select the treating physician, attaches once the employer
accepts the claim as compensable under N.C.G.S. § 97-25.

**2. Workers' Compensation— employer's right to control med-
    ical treatment—acceptance of liability through methods
    other than filing Form 60 or Form 21**

The full Industrial Commission did not err by concluding
that defendant employer accepted plaintiff employee's claim as
compensable prior to plaintiff's carpal tunnel surgeries, entitling
defendant to direct plaintiff's medical treatment, because: (1)
defendant could have accepted liability for medical expenses
through methods other than the filing of a Form 60 or Form 21
since plaintiff was not yet disabled under the Workers'
Compensation Act; (2) defendant verbally notified plaintiff
prior to surgeries that it was accepting plaintiff's claim; (3)
defendant thereafter also sent plaintiff's counsel written noti-
fication of its acceptance; and (4) plaintiff even understood
acceptance had occurred when she admitted that going into
surgery, she knew her medical expenses would not be covered by
workers' compensation.

**3. Workers' Compensation— employer's right to direct medical treatment—exceptions to rule not met**

Although there are exceptions to the employer's general right to direct medical treatment including when the employer has failed to direct medical treatment in a prompt and adequate manner, in the case of an emergency, and if plaintiff's selection of physicians is approved by the Industrial Commission, plaintiff employee did not fall under these three exceptions and did not have the right to select the surgeon to perform plaintiff's carpal tunnel surgeries, because: (1) defendant acted promptly and adequately; (2) plaintiff has nowhere maintained that her surgeries were an emergency, and the fact that she canceled her initial scheduled surgery and waited nearly a month to have surgery with another doctor lends no support to such a contention; and (3) the full Commission denied authorization of plaintiff's choice of doctors when it concluded that plaintiff did not have good cause to refuse treatment by the authorized doctor.

**4. Workers' Compensation— disability compensation—failure to make specific findings**

The full Industrial Commission erred in a workers' compensation case by denying plaintiff employee's claim for disability compensation, because the Commission failed to make any specific findings to allow the Court of Appeals to determine whether the Commission denied disability compensation on a lawful or unlawful basis.

Appeal by plaintiff from opinion and award filed 25 May 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 October 2000.

*Patterson, Harkavy & Lawrence, L.L.P., by Henry N. Patterson, Jr. and Martha A. Geer, for plaintiff-appellant.*

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock, for defendant-appellees.*

LEWIS, Judge.

Plaintiff has been employed as a sewer for defendant Lane Upholstery ("Lane") since 1969. Over a period of several years, plaintiff began experiencing numbness in her hands. However, she never reported any of these problems to either her employer or her regular

physician. Finally, in the Spring of 1997, the pain intensified, and she reported the pain and numbness to her gynecologist, Dr. Paul Caporossi. Dr. Caporossi referred her to Dr. John L. de Perczel, a general orthopedic surgeon.

Prior to seeing Dr. de Perczel, plaintiff informed various supervisors at work about her symptoms and her upcoming appointment with Dr. de Perczel. No one objected to her seeing Dr. de Perczel. Anne Story, Lane's Director of Human Resources, however, did inform plaintiff that, if her condition was work-related, she would need to seek treatment from a physician approved by Lane.

On 6 May 1997, plaintiff presented herself to Dr. de Perczel. Dr. de Perczel diagnosed her as having bilateral carpal tunnel syndrome, caused by her work. Upon learning of this diagnosis, Lane arranged for plaintiff to see its physician, Dr. Robert Hart of the Hart Industrial Clinic. Dr. Hart eventually concurred in Dr. de Perczel's diagnosis. He assigned plaintiff to light duty work pending further evaluation. On 3 June 1997, Dr. Eric Hart, also of the Hart Industrial Clinic, referred plaintiff to Dr. Carl Michael Nicks for a surgical evaluation of her condition. Dr. Nicks recommended that plaintiff undergo carpal tunnel release surgery. Dr. Nicks scheduled this surgery for 12 June 1997.

Two days before the scheduled surgery, plaintiff unilaterally canceled her appointment with Dr. Nicks. She informed her employer that she wished to have Dr. de Perczel perform the surgery instead. She stated that she had no specific objection to Dr. Nicks; she just felt more comfortable with Dr. de Perczel. Ms. Story explained to plaintiff that Lane would not pay for the surgery because only Dr. Nicks had been authorized to perform the surgery—Dr. de Perczel was not one of its authorized physicians.

On 1 July 1997, Lane's claims adjuster wrote a letter to plaintiff's counsel, advising plaintiff that Lane had accepted her claim as compensable. The letter again informed plaintiff that Lane had only authorized the carpal tunnel release surgery with Dr. Nicks and thus would not voluntarily pay for her surgery with Dr. de Perczel. A copy of this letter was forwarded to the Industrial Commission.

Notwithstanding her employer's refusal to pay for the surgery, plaintiff presented herself to Dr. de Perczel on 7 July 1997. Two days later, on July 9, Dr. de Perczel performed a right carpal tunnel release, and a few weeks later, he followed up by performing

a carpal tunnel release on the left hand. Following the first surgery, Dr. de Perczel ordered plaintiff to cease work. She has not returned to work since then.

In addition to refusing to pay for her surgery with Dr. de Perczel, Lane has also refused to provide plaintiff with any disability compensation. This apparently stems from conflicting treatment plans. Dr. Nicks testified that, had he performed the carpal tunnel surgeries, he would have assigned plaintiff to light duty work, but would not have removed her from work for more than seven days. Thus, under his plan, plaintiff would not have been entitled to any disability compensation, only reimbursement for the costs of her medical treatment. *See* N.C. Gen. Stat. § 97-28 (1999) ("No compensation . . . shall be allowed for the first seven calendar days of disability resulting from an injury, except [medical expenses]."). Dr. de Perczel, however, opined that plaintiff was unable to perform any work whatsoever and thus removed plaintiff from work indefinitely. Under his plan, therefore, plaintiff would be entitled to some disability compensation.

Plaintiff filed a Form 33 Request for Hearing with the Industrial Commission, seeking the authorization of Dr. de Perczel, reimbursement of the medical expenses associated with the carpal tunnel surgeries, and disability compensation. The deputy commissioner concluded Lane never had the authority to control plaintiff's medical treatment because it had never officially accepted liability. As such, the deputy commissioner awarded plaintiff past and future medical expenses, as well as temporary total disability benefits in the amount of $252.15 per week from the period of 9 July 1997 forward.

The Full Commission reversed. It concluded that Lane had indeed accepted liability and thus had the right to control plaintiff's medical treatment. It further denied plaintiff's request to have Dr. de Perczel authorized as her treating physician. Accordingly, the Full Commission denied her claims for medical expenses and disability compensation. Plaintiff now appeals to this Court.

[1] Plaintiff first contests Lane's right to select her treating physician for purposes of her carpal tunnel release surgeries. In particular, plaintiff argues that Lane had no right of control prior to the surgeries because it never formally accepted liability until it filed a Form 60 after the surgeries. We reject this argument.

Generally speaking, the employer has the right to direct the medical treatment for a compensable injury. *Schofield v. Tea Co.*, 299 N.C.

582, 586, 264 S.E.2d 56, 60 (1980). This includes the right to select the treating physician. *Id.* However, neither our courts nor our legislature has ever explicitly articulated at what point this right of the employer attaches. The Commission treated the employer's acceptance of liability as the triggering point. We agree with this proposition and therefore hold that an employer's right to direct medical treatment (including the right to select the treating physician) attaches once the employer accepts the claim as compensable.

As soon as the employee claims he or she is entitled to compensation, the employer has the right to require the employee to submit to an examination with one of its authorized physicians. N.C. Gen. Stat. § 97-27(a) (1999). One of the implicit purposes of this requirement is to enable the employer to ascertain whether the injury is work-related or not and thus whether the claim is indeed compensable. At this point, however, the statute only confers upon the employer the right to require its employee to submit to an examination. We do not believe this limited right can be equated with a right to direct medical treatment in general. Were that the case, an employer could ostensibly force its employee to undergo treatment with one of its physicians and then still turn around and deny liability. We do not believe our Legislature intended such a result by enacting section 97-27.

Instead, we conclude the right to direct medical treatment is triggered only when the employer has accepted the claim as compensable. N.C. Gen. Stat. § 97-25 confers upon the employer the duty to provide all medical compensation. This medical compensation includes the providing of medical supplies, services, and treatment. N.C. Gen. Stat. § 97-2(19). But until the employer accepts the obligations of its duty, i.e., paying for medical treatment, it should not enjoy the benefits of its right, i.e., directing how that treatment is to be carried out.

[2] Having concluded that Lane's right to direct medical treatment and thereby select plaintiff's carpal tunnel surgeon attached upon acceptance of liability, we must next address when that acceptance occurred here. Plaintiff claims Lane's acceptance did not occur until it filed a Form 60 with the Industrial Commission—after her carpal tunnel surgeries had been performed. Lane counters that acceptance occurred prior to the surgeries, when it notified plaintiff both orally and in writing that it was treating her claim as compensable. The Commission ultimately agreed with Lane, as do we.

KANIPE v. LANE UPHOLSTERY

[141 N.C. App. 620 (2000)]

Our statutes nowhere set forth exclusive methods of accepting liability. The employer's filing of a Form 21 agreement (if approved by the Commission) has repeatedly been held to constitute an acceptance of liability. *See, e.g., Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 77, 476 S.E.2d 434, 436 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997). Similarly, directly paying the employee, coupled with the filing of a Form 60, is also sufficient to accept liability. N.C. Gen. Stat. § 97-18(b); *Calhoun v. Wayne Dennis Heating & Air Cond.*, 129 N.C. App. 794, 798, 501 S.E.2d 346, 349 (1998), *disc. review denied*, 350 N.C. 92, 532 S.E.2d 524 (1999). But these forms are premised upon there being a disability. Here, as of the time of the surgeries, this was a "medical only" claim. Plaintiff was only seeking medical expenses associated with her surgeries; she was not yet seeking disability compensation. In particular, plaintiff had not yet missed any days of work and, although she was assigned to light duty work, she was still earning the same wages as she was before. Therefore, plaintiff was not yet "disabled" under our Workers' Compensation Act. *See generally* N.C. Gen. Stat. § 97-2(9) (defining disability as the incapacity to earn the same wages). And because she was not yet "disabled," Lane was not required to file a Form 60 or Form 21. As such, Lane could have accepted liability for medical expenses through methods other than the filing of these forms.

Lane did so here. Prior to the surgeries, Lane verbally notified plaintiff it was accepting her claim. Lane thereafter also sent plaintiff's counsel written notification of its acceptance. Plaintiff even understood that acceptance had occurred, as she admitted that, going into surgery, she knew her medical expenses would not be covered by workers' compensation. On these facts, we conclude that Lane acted sufficiently to accept liability prior to the carpal tunnel surgeries. *Cf. Craver v. Dixie Furniture Co.*, 115 N.C. App. 570, 579-80, 447 S.E.2d 789, 795 (1994) (holding that employer's verbal acceptance of liability was sufficient to estop it from later denying liability before the Commission); *Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 371, 396 S.E.2d 626, 629 (1990) (same). Accordingly, Lane had the right at that time to direct plaintiff's medical treatment, including selecting her surgeon.

[3] Although Lane had the right to select the surgeon to perform the carpal tunnel surgeries, this right is not unlimited. There are a few recognized exceptions to the employer's general right to direct medical treatment. First, an employee may procure his own physician when the employer has failed to direct medical treatment in a prompt

and adequate manner. *Schofield*, 299 N.C. at 587, 264 S.E.2d at 60. Here, there is no question that Lane acted promptly and adequately. As soon as plaintiff informed Lane of Dr. de Perczel's carpal tunnel diagnosis, Lane directed plaintiff to the Hart Industrial Clinic for further examinations and treatment. And it continued to do so right up until plaintiff's surgeries. Second, an employee may procure treatment on his or her own in the case of an emergency. N.C. Gen. Stat. § 97-25. Plaintiff has nowhere maintained that her carpal tunnel surgeries were an emergency. Moreover, the fact that she canceled her 12 June 1997 scheduled surgery with Dr. Nicks and waited nearly a month to have the surgery with Dr. de Perczel lends no support to such a contention.

Third, even in the absence of an emergency or the employer's failure to direct timely and adequate treatment, an employee still may select his or her own physician if such selection is approved by the Commission. *Id.*; *Schofield*, 299 N.C. at 591, 264 S.E.2d at 62. The employee's request for approval may even be filed after the treatment has been procured, just as long as the request is filed within a reasonable time thereafter. *Schofield*, 299 N.C. at 592-93, 264 S.E.2d at 63. Doing so, however, involves some element of risk for the employee. Approval of an employee-selected physician is left to the sound discretion of the Commission. *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 207, 472 S.E.2d 382, 387, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996).

Here, the Full Commission denied authorization of Dr. de Perczel based upon two grounds. First, it concluded that plaintiff's request for authorization was not filed within a reasonable time because her request came after her surgeries with Dr. de Perczel. As just stated, this reasoning is flawed; the request for approval need not be filed before treatment is actually administered. Were this the only ground upon which the Commission denied authorization, we would be constrained to hold that the Commission abused its discretion. However, the Commission also denied authorization on the ground that plaintiff did not have good cause to refuse treatment by Dr. Nicks. We find no abuse of discretion as to this ground. The evidence reflects Dr. Nicks was both well-qualified and competent to perform the carpal tunnel release surgeries. In fact, plaintiff never questioned his abilities. Her *only* explanation for wanting Dr. de Perczel was she "didn't like Dr. Nicks's attitude and the way he did not explain stuff to [her]." (Tr. at 38). Given that this was her only reason, we cannot say the Commission abused its discretion in refusing to authorize treatment

with Dr. de Perczel. Accordingly, we conclude the Commission properly denied plaintiff's claims for medical expenses associated with her carpal tunnel surgeries.

**[4]** Plaintiff also contests the Commission's denial of her claim for disability compensation. Specifically, she contends the Commission made insufficient findings to support its denial of her claim. We agree and therefore vacate and remand that portion of the opinion and award denying plaintiff's disability compensation claim.

In denying her claim, the Commission summarily concluded, "Any inability by plaintiff to earn wages subsequent to 9 July 1997 [the date of her first carpal tunnel surgery with Dr. de Perczel] was not related to her occupational disease and she is, therefore, not entitled to any disability compensation after that date." The Commission, however, never made any findings explaining its basis for denying disability compensation. Perhaps the Commission based its denial on plaintiff's refusal to undergo medical treatment with Dr. Nicks: If so, this is not a valid reason for denial. Although medical expenses are not covered when an employee refuses to see an authorized physician, disability compensation may not be cut off unless the Commission has first ordered the employee to undergo treatment with that physician. N.C. Gen. Stat. § 97-25; *Deskins v. Ithaca Industries, Inc.*, 131 N.C. App. 826, 832, 509 S.E.2d 232, 236 (1998). No such prior order by the Commission existed here.

Alternatively, the Commission might have based its denial of disability compensation on Dr. Nicks' treatment plan, in which he determined that plaintiff would not have missed more than a week of work due to her injury. If that were the case, this basis would be lawful. *See* N.C. Gen. Stat. § 97-28 ("No compensation . . . shall be allowed for the first seven calendar days of disability resulting from an injury, except [medical expenses]."). But because the Commission never made any specific findings, we simply do not know whether it denied disability compensation on a lawful or unlawful basis. We therefore remand to the Commission to reconsider plaintiff's claim for disability compensation and to make explicit findings with respect to this claim.

Affirmed in part, vacated in part and remanded.

Judges WYNN and HUNTER concur.