REBECCA HARRISON, PLAINTIFF-APPELLANT v. LUCENT TECHNOLOGIES, EMPLOYER-DEFENDANT, AND LUCENT TECHNOLOGIES DISABILITY BENEFITS, CARRIER-DEFENDANT, APPELLEES

No. COA02-348

(Filed 18 February 2003)

**Workers' Compensation— not an injury by accident—right to direct medical treatment not acceptance of liability**

The Industrial Commission did not err in a workers' compensation case by denying plaintiff employee compensation for her shoulder injury and psychological problems allegedly stemming from her injury based on its findings and conclusion that plaintiff's injuries were not caused by an accident, because: (1) the record shows that at the time of plaintiff's injuries, she was engaged in normal and routine job activities; and (2) even though

the employer directed medical treatment, it did not accept the claim as compensable and providing medical treatment does not mean acceptance of liability.

Appeal by plaintiff from order entered 29 November 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 January 2003.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff.*

*Womble, Carlyle, Sandridge & Rice, by Clayton M. Custer and Stan B. Green, for defendants.*

WYNN, Judge.

Under the North Carolina Workers' Compensation Act, an injury arising out of and in the course of employment is compensable only if caused by an "accident." N.C. Gen. Stat. § 97-2(6) (2001). In this appeal, Rebecca Harrison contends the North Carolina Industrial Commission erred in concluding that her injuries were not compensable under the Workers' Compensation Act because the injuries were not caused by an accident. We, however, find the full Commission's findings of fact support the conclusion that Ms. Harrison's injuries were not caused by a compensable accident; accordingly, we affirm the decision of the full Commission.

The underlying facts tend to show that Ms. Harrison had been an employee of Lucent Technologies, and its predecessor AT&T, since 1969. At the time of her alleged accident, Ms. Harrison worked as a secretary for Dale Posny in the Human Resources Department. Her duties included typing, faxing, making airline reservations, ordering and stocking supplies, and other similar activities.

According to Ms. Harrison, on 21 May 1999, she sat at her cubicle, reached over the side of her chair to pick up a heavy box of manila folders, got up and began carrying the box. After taking a few steps, she felt a twinge in her left shoulder and neck that almost caused her to pass out. One of her co-workers, Wendy Neely, helped Ms. Harrison to the company's medical department for assistance.

Five days later, Ms. Harrison went to her family physician and was examined by a physician assistant, Margie Trent. As a result of the examination, Ms. Trent ordered an MRI of her cervical spine (which revealed narrowing and degenerative changes at C5-6 but no

HARRISON v. LUCENT TECHNOLOGIES

[156 N.C. App. 147 (2003)]

evidence of disk herniation or spinal cord compression) and advised her to stay out of work from May 31 until June 7. Thereafter, Lucent Technologies' company doctor, Dr. Wilcockson, examined Ms. Harrison on 1 June 1999 and concluded that she could return to work the next day with restrictions of no lifting, pushing or pulling more than five pounds. Consequently, Ms. Harrison reported to work on 2 June 1999. During a return visit to Dr. Wilcockson, her weight restriction was raised to ten pounds.

Ms. Harrison continued working and did not seek further medical treatment until a 9 August 1999 visit with Dr. Wilcockson. At that time, she informed the doctor that although she had improved, she still had some left shoulder pain. As a result, Dr. Wilcockson continued her restrictions on a permanent basis.

On 11 August 1999, Ms. Harrison returned to her family physician with multiple complaints, including persistent pain in her left shoulder. Ms. Trent, concerned that Ms. Harrison might have rotator cuff syndrome, ordered an x-ray to help determine whether Ms. Harrison should be referred to an orthopedic surgeon.

On 19 August 1999, Ms. Harrison's supervisor, Ms. Posny, instructed Ms. Harrison to help clean out an office by emptying and removing several bound volumes. The binders varied in size with some several inches thick. Ms. Harrison began opening the binders, removing the papers and making several trips down the hall to take the papers to the appropriate containers. On each occasion she chose how much paper to carry and did not know the weights she lifted. By the time the job was complete, her left shoulder was bothering her more, but she did not complain of any problems to Ms. Posny. However, on 23 August 1999, she went to Dr. Wilcockson and complained she had developed soreness in her left shoulder while emptying the binders on 19 August. He referred her to Dr. Gramig, an orthopedic surgeon, who was under contract to render services to Lucent Technologies' employees.

On 26 August, Dr. Gramig examined Ms. Harrison who informed him that she could not lift her arm. According to Ms. Harrison, Dr. Gramig attempted a left shoulder manipulation without anesthesia (which Ms. Harrison claims traumatized her), diagnosed her with adhesive capsulitis of the left shoulder and ordered an MRI of the shoulder. However, because Lucent Technologies denied her claim and Dr. Gramig didn't accept her insurance, Ms. Harrison had to see a different doctor.

Ms. Harrison returned to her family physician on 21 September 1999 and was referred to Dr. Riggin, another orthopedic surgeon. Dr. Riggin saw her on 27 September 1999 and agreed that she had adhesive capsulitis. He treated her with a procedure where her shoulder was manipulated under anesthesia to break the adhesions. She then underwent aggressive physical therapy.

Up until the spring of 1999, Ms. Harrison and Ms. Posny had a good working relationship. However, after her injury, Ms. Harrison felt that she was being harassed by her employer because of her medical problems. On 3 September 1999, Ms. Posny imposed a fifteen-minute time limit for errands and began to monitor Ms. Harrison closely. If Ms. Harrison was unable to complete her errands within fifteen minutes, she was to notify Ms. Posny of her location. Although Ms. Harrison believes this was harassment, Ms. Posny testified that the rule was imposed because she could not locate Ms. Harrison for three hours during a workday in April. In September 1999, Ms. Harrison received a verbal warning and an unsatisfactory conduct notation in her personnel file. Because of the imposition of the fifteen minute rule and the warning, Ms. Harrison filed two grievances with her union. Ms. Harrison's relationship with Ms. Posny became increasingly strained.

After Ms. Harrison remained out of work pursuant to Dr. Riggin's orders, Lucent Technologies began calling Ms. Harrison on a daily basis to ascertain how she was doing and to determine when she would return to work. Then in December 1999, Lucent Technologies informed Ms. Harrison they were removing her from the payroll although her surgeon had advised her not to work. Thereafter, Ms. Harrison was admitted to the Forsyth Medical psychiatric ward with symptoms of anxiety and depression with suicidal threats. Dr. Williams, a psychiatrist, determined that Ms. Harrison had experienced symptoms of rapid heart-beat, anxiety and panic which had been aggravated by her shoulder injury, associated hospitalization and conflict with her employer to the point that she had developed a post-traumatic stress disorder with associated depression and panic disorder. Ms. Harrison was hospitalized and treated with medication and therapy until 31 December 1999.

Ms. Harrison filed workers' compensation claims for the 21 May and 19 August 1999 incidents. Although Lucent Technologies initially provided medical treatment for each injury, liability was ultimately denied. The full Commission awarded Ms. Harrison compensation for her neck only, and ordered Lucent Technologies to pay all medical

expenses rendered for the neck injury. Lucent Technologies was also ordered to pay all medical expenses arising from the treatment by Dr. Wilcockson and Dr. Gramig, which Lucent Technologies authorized. However the full Commission denied any compensation for Ms. Harrison's psychological problems and her shoulder injury. Ms. Harrison appeals.

---

"Under the North Carolina Workers' Compensation Act, an injury arising out of and in the course of employment is compensable only if caused by an 'accident' and the claimant bears the burden of proving an accident has occurred." N.C. Gen. Stat. § 97-2(6) (2001); *Calderwood v. The Charlotte-Mecklenburg Hospital Authority*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999). "An accident is an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." *Id.* "The elements of an 'accident' are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Adams v. Burlington Industries, Inc.*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983).

Ms. Harrison contends the full Commission erred when it concluded Ms. Harrison did not have a compensable injury by accident to her shoulder. "When considering an appeal from the Commission, its findings are binding if there is any competent evidence to support them, regardless of whether there is evidence which would support a contrary finding. Therefore, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings, and (2) whether those findings justify its conclusions of law." *Shaw v. Smith & Jennings, Inc.*, 130 N.C. App. 442, 445, 503 S.E.2d 113, 116 (1998).

In this case, the Commission found

13. On 21 May 1999, plaintiff lifted a box of manila envelopes in a normal manner. There was nothing unusual about the weight of the box or the circumstances when she lifted it. She routinely lifted and carried boxes of envelopes as part of her regular job duties of placing office supplies in the supply cabinet.

. . .

15. On August 19, 1999 when plaintiff emptied the binders, she was performing one of her regular job duties. There was nothing

unusual or out of the ordinary in the manner that she removed the papers from the binders or carried them to the bins on that occasion. She did not prove that she lifted an unusual or excessive amount of weight on that date. Consequently, she did not sustain a compensable injury to her shoulder on August 19, 1999.

These findings were supported by Ms. Harrison's testimony that her job duties included getting supplies out of the boxes on the floor and putting them in the supply closet, removing papers from binders and placing those papers in the appropriate bin. Ms. Harrison also testified that the other secretaries had similar duties. Ann Webster Whiddon, Lucent Technologies work force relations and staffing manager, testified the job description for a secretary position supporting a third-level manager, Ms. Harrison's position, included things such as organizing offices, cleaning out an office, taking proprietary materials to bins, stocking supply closets and transporting those supplies. Dale Posny testified the box of manila folders which allegedly caused the 21 May 1999 injury contained a hundred letter size manila envelopes and weighed five pounds. These facts constitute competent evidence to support the findings of fact.

Based upon these findings of fact, the Commission concluded:

4. However, a shoulder injury must meet the standards of an injury by accident in order to be compensable. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.

5. On May 21, 1999, plaintiff did not sustain a compensable injury by accident to her shoulder arising out of and in the course of her employment with defendant-employer.

6. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her shoulder injury, except for the medical treatment authorized by defendant-employer.

7. On August 19, 1999 plaintiff did not sustain an injury by accident to her left shoulder arising out of and in the course of her employment with defendant-employer. Consequently, plaintiff is not entitled to benefits under the Workers' Compensation Act for her shoulder injury or the subsequent psychiatric problems related to her shoulder injury.

**HARRISON v. LUCENT TECHNOLOGIES**

[156 N.C. App. 147 (2003)]

8. However, because defendant authorized the treatment by Dr. Wilcockson and Dr. Gramig, defendant is liable for payment to those providers.

We hold that the Commission's findings of fact justify its conclusions of law. Indeed, the record shows that at the time of Ms. Harrison's injuries, she was engaged in normal and routine job activities. Accordingly, the circumstances of Ms. Harrison's injury does not meet the criteria of injury by accident.

Nonetheless, Ms. Harrison argues that this Court's holding in *Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 540 S.E.2d 785 (2000), mandates that if the employer directs the medical treatment of an employee allegedly injured at work, the employer is estopped from denying liability for a workers' compensation claim arising out of that alleged injury. We disagree.

In *Kanipe*, this Court held "an employer's right to direct medical treatment (including the right to select the treating physician) attaches once the employer accepts the claim as compensable." *Kanipe*, 141 N.C. App. at 624, 540 S.E.2d at 788. What Ms. Harrison would have us do in her case is to invert this holding to conclude that an employer accepts liability once the employer directs medical treatment. We decline to do so because neither the reasoning of *Kanipe* nor the facts of this case support the illogical conclusion that providing medical treatment means acceptance of liability. In this case, Lucent Technologies provided a medical department in its facilities for its employees which Ms. Harrison visited when she felt pain. Moreover, the Commission properly determined that since Lucent Technologies "authorized the treatment by Dr. Wilcockson and Dr. Gramig, [it] is liable for payment to those providers." These actions, however, do not estop Lucent Technologies from denying liability for injuries that the Commission determined were not caused by a compensable accident.

An employee's right to workers' compensation is determined by statute. In this case, the Commission's findings of fact support its conclusion that Ms. Harrison's shoulder injury did not meet the definition of injury as defined by N.C. Gen. Stat. § 97-2(6) (2001) and as interpreted by case law. Therefore, Ms. Harrison was not entitled to workers' compensation benefits. Finally, we have considered plaintiff's other assignments of error and find they are without merit. Accordingly, the award of the full Commission is,

Affirmed.

Judges BRYANT and GEER concur.