***********
On December 11, 2000, the Full Industrial Commission entered an Opinion and Award affirming in its entirety the Deputy Commissioner's Opinion and Award. Plaintiff then appealed to the Court of Appeals.
Defendant filed a petition for writ of certiorari to the North Carolina Supreme Court, which was granted. However, on 7 November 2003 the Supreme Court issued a per curiam opinion holding that defendant's petition had been improvidently allowed. Lee v. BrianCenter, 357 N.C. 575, ___ S.E.2d ___ (2003).
It is now before the Full Commission on remand from the North Carolina Court of Appeals.
 ***********
As required by the North Carolina Court of Appeals, the Full Commission finds as follows:
 FINDINGS OF FACT
1. After plaintiff's injury by accident on November 2, 1991, she was treated by Dr. Todd Guthrie in Fletcher. Following an unsuccessful surgery, he recommended fusion surgery and referred plaintiff to Dr. Todd Chapman. This referral was not made at the request of defendant.
2. Since June 17, 1992 during which time plaintiff was living in the Hendersonville area, plaintiff's authorized treating physician was Dr. Todd Chapman of Miller Orthopaedic Clinic in Charlotte. Dr. Chapman performed a spinal fusion on October 29, 1992, with a second procedure to remove the instrumentation on the following day. Following a period of treatment, Dr. Chapman found plaintiff capable of driving an automobile as of August 27, 1993.
3. After receiving the Full Commission Opinion and Award dated January 21, 1998, which found plaintiff was justified in refusing to accept jobs that were determined to be "make work," adjuster Lynn Key assigned the claim to a vocational specialist to assist in returning plaintiff to work suitable to her capacity.
4. Jane Veal, a vocational specialist with Concentra Managed Care, recommended first that plaintiff's current medical restrictions be obtained because it had been over a year since plaintiff had last had a medical assessment.
5. Ms. Key contacted Ms. Joanne Johnson, a medical case manager, to schedule an appointment with Dr. Chapman who had last treated plaintiff. However, because of Dr. Chapman's health problems, he was available only to evaluate plaintiff, and if plaintiff required any type of prescription or treatment, he could not perform such. Ms. Key then authorized plaintiff to see Dr. Mark Hartman, who was in practice with Dr. Chapman at Miller Orthopaedic Clinic.
6. On March 11, 1998 Ms. Johnson scheduled plaintiff to be evaluated by Dr. Hartman at an appointment on March 23, 1998 at Miller Clinic in Charlotte. Plaintiff was informed of this appointment. Thereafter, plaintiff sought unauthorized medical treatment from her family doctor, Dr. Steven Crane. Previously, as early as November 2, 1993, plaintiff and her attorney had been advised by defendant that care by Dr. Crane was unauthorized. Nevertheless, plaintiff was seen by Dr. Crane who referred her, though without authorization, to Dr. David Mackel, an orthopaedist in Hendersonville who saw her on March 16, 1998. Plaintiff's counsel contacted Ms. Key to request that defendant authorize Dr. Mackel as the treating physician. Since arrangements were currently underway to have plaintiff evaluated by Dr. Hartman, Ms. Key advised plaintiff's counsel that this would not be authorized. Prior to this time, plaintiff had not received or requested treatment from any physician since December 1996.
7. Plaintiff failed to attend the appointment with Dr. Hartman on March 23, 1998. According to the Court of Appeals, plaintiff's failure does not constitute a refusal.
8. On April 2, 1998 defendant filed a motion with the Commission seeking an order to compel plaintiff's attendance at an evaluation by Dr. Hartman to be scheduled. By Order filed May 27, 1998, the Executive Secretary directed plaintiff to attend a subsequent examination by Dr. Hartman and, if plaintiff needed transportation to that appointment, directed her to submit documentation to the Executive Secretary regarding any transportation difficulties.
9. Plaintiff failed to file any information with the Commission pursuant to the May 27, 1998 Order of the Executive Secretary to indicate or explain any transportation difficulties so that, if reasonable grounds were found to exist, the Executive Secretary could order that arrangements be made timely by, and at the expense of, defendant so as to avoid a cancellation and re-scheduling of appointments.
10. Ms. Johnson rescheduled plaintiff to see Dr. Hartman on June 22, 1998, which was reasonable with regard to time and place. Plaintiff again failed to attend this appointment. According to the Court of Appeals, plaintiff's failure does not constitute a refusal and was justified.
11. In the past, for a number of years, plaintiff had treated with Dr. Chapman, who was located in Charlotte with no apparent transportation difficulties despite the fact that she lived in the Hendersonville area. As far back as 27 August 1993, Dr. Chapman specifically noted that plaintiff was capable of driving an automobile and there had not been any change in this assessment by a physician.
12. Vocational specialist, Ms. Veal, had advised the adjustor, Ms. Key, that she understood from plaintiff's counsel that plaintiff was claiming transportation to be an issue. It was in part for that reason, Ms. Key agreed to set up the evaluation at the Miller Orthopaedic Clinic in Charlotte, which is where plaintiff had last treated, so a determination could be obtained by the treating physician as to plaintiff's current physical restrictions and her capacity to drive.
13. Neither Ms. Key nor Ms. Veal nor Ms. Johnson entered into an agreement with plaintiff to provide transportation to either of the two appointments scheduled with Dr. Hartman. According the Court of Appeals, plaintiff's testimony to the contrary is accepted as credible.
14. After the first appointment was scheduled with Dr. Hartman, plaintiff requested through counsel, that an ambulance be provided to transport her to the appointment with Dr. Hartman on the grounds that she needed a way to recline while traveling. However, at no time has any doctor indicated that plaintiff needs to recline during transportation or that an ambulance is necessary for her travel.
15. Plaintiff had been able to attend meetings held at her attorney's office and attend medical appointments scheduled on her own, without assistance from defendant, during the same time that she was asked to attend appointments with Dr. Hartman. The adjuster for the servicing agent testified she was never advised that plaintiff no longer possessed a driver's license, and the adjuster had the understanding that plaintiff had family members who could drive her to and from doctor's appointments. Further, no treating physician had written or otherwise documented that plaintiff is not able to drive.
16. On June 3, 1998, the parties attended a mediation. After the mediation was declared an impasse, plaintiff was advised that if she contended that transportation was a problem which would prevent her from attending the upcoming June 22, 1998 appointment, she would need to present that information timely to the Executive Secretary, who also had so Ordered plaintiff pursuant to the Order of May 27, 1998. Defendant would not voluntarily provide transportation without plaintiff first complying with the Executive Secretary's Order filed just 7 days earlier. Even the mediator told plaintiff's attorney to follow the Executive Secretary's Order. Nevertheless, despite the clear Order of the Executive Secretary, the instruction of the mediator and the unequivocal statement by defendant that transportation would not be voluntarily provided, plaintiff failed to communicate in any manner with the Executive Secretary regarding the alleged transportation problems. It is noted that when compliance was not an issue, plaintiff never complained that she could not attend appointments with Dr. Chapman in Charlotte and transportation only became an issue when she was asked to begin complying with vocational rehabilitation efforts, apparently contrary to her wishes.
17. On May 25, 1998, plaintiff's counsel filed a motion with the Commission seeking to change plaintiff's treating physician to Dr. David Mackel. The Executive Secretary did not rule on this motion since plaintiff's subsequent request on May 29, 1998 for a hearing before a deputy commissioner removed the motion from the jurisdiction of the Executive Secretary's Office to that of a deputy commissioner. Subsequently, Deputy Commissioner Dollar, who heard this matter on October 27, 1998, denied plaintiff's motion in the deputy commissioner's Opinion and Award filed on June 22, 1999.
18. Regarding plaintiff's May 25, 1998 Motion for Change of Treating Physician, defendant has not been unwilling to provide appropriate treatment with Dr. Hartman. In fact, defendant has not failed to provide plaintiff with the opportunity to obtain reasonable medical treatment for her compensable injury. Moreover, defendant has directed medical treatment in a prompt and adequate manner and plaintiff has not required emergency treatment.
19. This fact notwithstanding, plaintiff had been obtaining unauthorized medical treatment from her family doctor, Dr. Steven Crane during this time period as well. As early as November 2, 1993 while plaintiff was under Dr. Chapman's care, defendant had advised plaintiff and her attorney that care by Dr. Crane was unauthorized and would not be paid by defendant. Nevertheless, plaintiff apparently continued to treat on occasion with Dr. Crane knowing the treatment was unauthorized and yet made no request to the Industrial Commission for approval of any unauthorized treatment until her May 25, 1998 motion after a pattern began, and contemporaneously with the issue, of noncompliance.
20. When Ms. Key advised plaintiff's counsel that Dr. Mackel would not be authorized, the decision was in part due to the fact that the referral had originated with an unauthorized doctor. It was also due to the fact that defendant was currently attempting to provide plaintiff with continuing medical treatment by an orthopedic specialist, Dr. Hartman, who worked with Dr. Chapman, who no longer had prescription or treatment rights but who could perform evaluations, and would best provide a continuity in plaintiff's care.
21. Defendant has met its obligation to provide plaintiff with reasonable and necessary medical treatment. Considering that plaintiff traveled to the same medical office in Charlotte for several years; that plaintiff was found by Dr. Chapman to be capable of driving an automobile as far back as 1993; and that plaintiff's medical records are located in the office where Dr. Hartman is located, the provision of treatment with Dr. Hartman in Charlotte is both reasonable in substance as well as in place.
22. Plaintiff was notified as far back as 1993 that unauthorized medical treatment would not be approved or paid. Further, plaintiff was specifically notified that no treatment recommended by Dr. Crane would be provided. The referral to Dr. Mackel came from Dr. Crane. Thus, plaintiff knew or should have known that treatment with Dr. Mackel would not be authorized without prior agreement from defendant or the approval from the Commission. In fact, plaintiff's counsel was told in early 1998 that Dr. Mackel would not be authorized. Despite these facts, plaintiff went forward with treatment with Dr. Mackel beginning on March 16, 1998. She saw him again on April 17, 1998. Dr. Mackel provided treatment and prescribed plaintiff medications. This occurred at the very same time that defendant was offering plaintiff, and attempting to get plaintiff to accept, treatment with Dr. Hartman. Thus, a pattern of noncompliance and noncooperation by plaintiff emerges. It was not until May 25, 1998, over two months after plaintiff saw Dr. Mackel, that she requested approval from the Executive Secretary to change physicians. Particularly under these circumstances and considering plaintiff's pattern of noncompliance, the failure of plaintiff to seek from the Commission approval of treatment with Dr. Mackel prior to beginning treatment was neither reasonable nor timely. Further, in view of the fact plaintiff presents a pattern of noncompliance and noncooperation with defendant's request to refer her to a doctor at the same location where she had previously been treated, her request two months after being seen by Dr. Mackel is neither timely nor reasonable. Thus, the Commission finds in the exercise of its discretion that plaintiff's request was not timely or reasonably made.
23. Defendant prevailed before the Deputy Commissioner and the Full Commission previously and plaintiff took appeal to the Court of Appeals. Therefore, the Full Commission finds that plaintiff is not entitled to attorney's fees.
24. In the exercise of its discretion, and in light of the fact that defendant's defense is based in reason rather than stubborn, unfounded litigiousness, the Full Commission finds that plaintiff is not entitled to defendant's payment of plaintiff's attorney's fees.
25. Plaintiff is entitled to interest on the amount owed to her from June 22, 1998, until paid, at the legal rate of interest provided in N.C. Gen. Stat. § 24-1.
 ***********
Based on the foregoing findings of fact and the decision of the Court of Appeals, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Defendant is not entitled to suspend payment of temporary disability compensation as of June 22, 1998. Plaintiff's failure to attend appointments with Dr. Hartman in both March and June 1998 does not constitute a refusal and was justified. N.C. Gen. Stat. §§ 97-25; 97-27(a).
2. Plaintiff is entitled to have defendant pay for all reasonably necessary medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-27 (2003). However, plaintiff is not entitled to have the defendant pay for unauthorized medical treatment. Id.; see also Kanipe v. LaneUpholstery, 141 N.C. App. 620, 624, 540 S.E.2d 785, 788 (2000). Plaintiff's Motion for change of treating physician to Dr. Mackel is denied at this time. However, once the evaluation by Dr. Hartman or other orthopaedic surgeon designated by defendant, is completed and a report is received, should plaintiff still desire a change of physicians, she may make such motion to the Executive Secretary. Id.
3. Defendant is entitled to direct plaintiff's medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-27 (2003);Kanipe v. Lane Upholstery, 141 N.C. App. 620, 624,540 S.E.2d 785, 788 (2000). Plaintiff has failed to prove by the greater weight of the evidence that an exception to this rule should apply as defendant promptly and adequately directed medical treatment, no emergency situation existed, and plaintiff did not request approval within a reasonable time for reasonably necessary treatment in the discretion of the Industrial Commission. Id. Dr. Hartman or other defendant-designated orthopaedic surgeon is plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-27 (2003).
4. Pursuant to N.C. Gen. Stat. § 97-86.2, plaintiff is entitled to interest on the amount owed to plaintiff from and after June 22, 1998, until paid, at the legal rate of interest provided in N.C. Gen. Stat. § 24-1.
5. In the discretion of the Full Commission and in view of plaintiff's noncooperation plaintiff is not entitled to benefits under N.C. Gen. Stat. § 97-88.
6. The denial of this claim was not without justification and due cause, and the reasons for the hearing were not engendered by unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based on the foregoing findings of fact, conclusions of law, and decision of the Court of Appeals, the Full Commission enters the following:
 ORDER
1. Defendant is not entitled to suspend payment of temporary disability compensation as of June 22, 1998. However, plaintiff remains under the Executive Secretary's Order of May 27, 1998 to attend an examination by Dr. Hartman or other orthopaedic surgeon so designated by defendant. Defendant shall hereinafter schedule another appointment at a reasonable time and so inform plaintiff thereof in a timely manner. N.C. Gen. Stat. §§ 97-25; 97-27(a).
2. Plaintiff's motion to change her treating physician to Dr. David Mackel is hereby DENIED. Once the evaluation by Dr. Hartman or other defendant designated physician is completed and a report is received, should plaintiff still desire a change of physician, she may make such motion to the Executive Secretary.
3. Plaintiff shall fully cooperate with all medical treatment and rehabilitative efforts provided by defendant.
4. Defendant shall pay all authorized medical expenses reasonably necessary and incurred or to be incurred which tend to effect a cure, provide relief or lessen the period of disability when bills for the same have been approved in accordance with Commission procedure.
5. Defendant is required to provide reimbursement for travel mileage incurred by plaintiff for all authorized medical and rehabilitative treatment after submission of properly completed Forms 25T to defendant. If plaintiff has difficulty procuring transportation, upon a showing of reasonable grounds to the Executive Secretary, she may request an Order from the Commission that defendant provide actual transportation in lieu of mileage reimbursement. Until such time as plaintiff satisfies the Executive Secretary of her needs and obtains an Order to this effect, defendant shall not be required to do so. The refusal of defendant to provide actual transportation, prior to the entry of an Order requiring it, shall not be accepted as a reasonable basis for plaintiff to fail to attend or cooperate with recommended medical or rehabilitative treatment in the future.
6. Defendant shall pay interest in the amount owed to plaintiff from and after June 22, 1998, until paid, at the legal rate of interest provided in N.C. Gen. Stat. § 24-1.
7. Defendant shall pay the costs.
This the 25th day of October 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN AWARD OF INTEREST:
 S/_____________ THOMAS J. BOLCH COMMISSIONER