I respectfully dissent from the majority's finding and conclusion that plaintiff has not established good grounds to change her authorized treating physician. N.C. Gen. Stat. § 97-25 provides, "an injured employee may select a physician of [her] own choosing to attend, prescribe and assume the care and charge of [her] case, subject to the approval of the Industrial Commission." N.C. Gen. Stat. § 97-25 (2003). "Approval of a physician selected by a workers' compensation claimant is left to the sound discretion of the Industrial Commission." Kanipe v.Lane Upholstery, 141 N.C. App. 620, 540 S.E.2d 785 (2000). Moreover, "[a] workers' compensation claimant's request to the Industrial Commission for approval of a physician may be filed even after the treatment has been procured, just as long as the request is filed within a reasonable time thereafter." Kanipe v. Lane Upholstery,141 N.C. App. 620, 540 S.E.2d 785 (2000).
The majority has also denied plaintiff's request for approval of the "treatment" provided by Dr. Smith. N.C. Gen. Stat. § 97-25 further provides, "The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer. . . ."
In the instant case, plaintiff suffered a compensable injury on February 16, 2000. Plaintiff's medical care was directed by defendant-employer from the time of her injury until early April 2001. In early 2001, Dr. Larry Knoll, an orthopedist and plaintiff's authorized treating physician, retired. In February 2001, defendant-employer directed plaintiff to submit to the care of Dr. Charles Shields, a physiatrist practicing in Hendersonville, North Carolina. Dr. Shields evaluated plaintiff and diagnosed her as suffering from chronic pain syndrome, and neck and shoulder girdle myalgias with possible myofascial components. Dr. Shields recommended a treatment regimen that included relaxation techniques and heavy medication.
Prior to being treated by Dr. Shields, plaintiff had undertaken physical therapy upon direction of Dr. Knoll. Despite plaintiff's request, Dr. Shields did not order further physical therapy, but only treated plaintiff with medication. Plaintiff continued to experience pain in her back, across her right shoulder and down her right arm. Plaintiff also experienced similar pain in her left arm but not to the same extent. Additionally, plaintiff's right hand was weak, tingled and would shake.
On March 26, 2001, plaintiff consulted her primary care physician, Dr. Robert Smith, for an upper respiratory infection. During this consultation, she inquired as to whether any of her symptoms could be side effects from the medication prescribed by Dr. Shields. Dr. Smith advised that the medications could be causing some of plaintiff's difficulties and she could be over-medicated. Dr. Smith recommended that plaintiff return to physical therapy. Pursuant to Dr. Smith's recommendation, plaintiff returned to physical therapy and obtained a significant reduction in the level of her pain and found that her condition improved.
Dr. Smith referred plaintiff for a functional capacity evaluation (FCE), which was conducted on June 6, 2001. The FCE results found that plaintiff was able to work at the "Sedentary-Light Physical Demand Level for an 8-hour day." The Blankenship System Reliability Profile indicated that plaintiff "did not demonstrate any symptom/disability exaggeration." The FCE Summary further suggested that plaintiff would benefit from physical therapy. These FCE results are contrary to Dr. Shield's note that plaintiff did not need further physical therapy and that she displayed obvious symptom magnification.
On or about April 10, 2001, plaintiff requested by telephone that defendant-employer authorize Dr. Smith's treatment of plaintiff and his referral to physical therapy. This request was denied. Plaintiff sent a letter to defendant-employer on April 17, 2001, requesting approval for treatment by Dr. Smith. Plaintiff did not receive a reply. By motion filed November, 2001, plaintiff requested the Industrial Commission to approve a change in physicians to Dr. Smith. This motion was granted by Deputy Commissioner Bradley W. Houser.
The physician authorized by defendants to treat plaintiff, Dr. Shields, closed his practice in the summer or fall of 2001. Prior to closing his practice, Dr. Shields released plaintiff from his care on April 26, 2001.
Defendants attempt to justify their refusal to approve Dr. Smith as plaintiff's authorized treating physician on the grounds that: (1) Dr. Shields had released plaintiff prior to their refusal; (2) Dr. Smith is a family physician who did not have any particular area of expertise and no special training in back, neck or arm injuries; and (3) "approving Dr. Smith as an authorized treating physician would prejudice the [d]efendant because he would not be providing [plaintiff] the best possible treatment."
As to defendants' first argument, however, Dr. Shields was not deposed in this matter, and the record is replete with evidence that plaintiff continued to experience pain and weakness in her back, shoulder and arm following her release by Dr. Shields. Plaintiff at least needed continuing medical treatment to provide relief and lessen her disability. The treatment provided by Dr. Smith provided relief and tended to lessen plaintiff's disability.
Defendants' second argument that Dr. Smith "is a family physician without a particular area of expertise and has no special training in back, neck or arm injuries," unfairly minimizes the medical competency of a family practice physician and there is no basis for such a broad-based statement. There is no evidence that the treatment provided by Dr. Smith to plaintiff was out of his area of expertise.
As to defendants' third argument, the only prejudice manifest as a result of failure to authorize Dr. Smith as plaintiff's treating physician is assessed to plaintiff, as she has suffered an admittedly compensable injury within the course and scope of her employment, but is without an authorized treating physician to oversee her healing process and medical maintenance.
Further, defendants cannot use the March 28, 2002 letter of Dr. Hankley to justify their refusal to authorize Dr. Smith as plaintiff's authorized treating physician. At the time of Dr. Hankley's review of the June 6, 2001 FCE results and plaintiff's job description, Dr. Hankley's opinion that plaintiff did not require further physical therapy appears to refer to plaintiff's medical needs as of March, 2002; and this opinion was given long after defendant had already refused to authorize Dr. Smith as plaintiff's treating physician.
In summary the treatment that Dr. Smith provided to plaintiff was reasonably related to her injury by accident and was reasonably required to at least provide relief and lessen her disability. The treatment was beneficial to plaintiff, defendants benefited from plaintiff's lessened disability and defendants should be required to pay for the treatment. Moreover, Dr. Smith should be authorized as plaintiff's treating physician because to do otherwise would leave plaintiff without an authorized treating physician in an admittedly compensable claim.
This case involves two issues which should not be confused, change of treatment and change of treating physician. Plaintiff has demonstrated the need for change of treatment as stated above. The treatment for which plaintiff seeks authorization and payment provided relief, lessened plaintiff's disability, was more effective than treatment provided by the authorized physician, Dr. Shields, and was the same treatment plaintiff's previously authorized physician had recommended before he retired. The decision to authorize a change in treatment is within the discretion of the Commission. Plaintiff timely requested the change in treatment and the change in treatment significantly improved plaintiff's condition. The majority has refused to authorize treatment which is known to have benefited plaintiff. The majority has also denied plaintiff's request for change of treating physician. The effect of such discretionary denial is to leave plaintiff with no treating physician in an admittedly compensable claim.
No purpose is served by denying plaintiff's request for change of treatment or change in treating physician. Considering the time and resources expended on these issues by the Commission and all parties, it is apparent that the Commission needs to adopt an expedited procedure for handling these types of issues.
For the above stated reasons, I dissent from the majority opinion herein.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER