* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that an employee/employer relationship existed at the time of the incident of June 6, 2002.
2. It is stipulated that the employer was self-insured at the time of the incident and that Allied Claims Administration was the administrator.
3. It is stipulated that the date of the injury was June 6, 2002.
4. It is stipulated that the parties were subject to the North Carolina Workers' Compensation Act at the time of the incident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
5. The claimant's compensation rate shall be determined by the Commission.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty years old and residing in Roanoke Rapids, North Carolina on the date of the hearing before the deputy commissioner. On June 6, 2002, plaintiff worked with Nash Heath Care Systems as a registered patient's clerk. Prior to working with defendant-employer, plaintiff engaged in the same type of work at another hospital, and prior to that, worked in the banking industry for 12 years. She has two years of college experience and was two months from earning an associate degree when she took her job in banking.
2. Plaintiff testified that she arrived at work at 7:00 a.m. on June 6, 2002. She went to the office to pick up and review forms to make sure there was nothing unusual before starting her job. Around 8:45 a.m., she testified that she stood and walked away from her desk towards her supervisor's office. Plaintiff described slipping on a recently waxed floor, and falling backwards to the floor. Plaintiff said that she fell straight back with her head and back hitting the floor, and that her head bounced off the floor. She testified that she tried to grab something to hold onto while falling, and that both of her elbows hit the floor as she fell. Following the fall, plaintiff testified that her shoulder, neck, back, legs, knees and arms all hurt. Plaintiff testified that her arms went numb at that time. Contrary to reports of the accident in the medical records, the first time plaintiff alleged hitting her elbows when she fell was at hearing. Therefore, plaintiff's testimony in this regard is deemed not credible and is given no weight.
3. Following her June 6, 2002 fall, plaintiff was treated at the Nash Healthcare emergency room and then went home. Her supervisor, Gwen Bottoms Messner, was with her in the ER and was aware of the fall. Ms. Messner testified that in the ER, plaintiff described pain specifically in her head and neck. Plaintiff did not mention pain or numbness in her hands or arms when reporting to Ms. Messner. She admitted that she was told to come back to Nash General if she had ongoing problems.
4. The following day, Friday, June 7, 2002, plaintiff went on her own accord to Halifax Regional emergency room, rather than returning to Nash General as her supervisor requested. She then followed up at Nash General on Sunday, June 9, 2002 and had a head CT scan which was normal. On June 10, 2002, an appointment was made for her by the employee health nurse at Nash Urgent Care. Plaintiff attended the appointment on that day, and reported back pain and headache. Nash Urgent Care wrote her a note to return to work on Tuesday, June 11, 2002, in a seated position and to avoid eyestrain.
5. Immediately following her appointment with Nash Urgent Care, plaintiff sought treatment at the Wilson Medical Center emergency room. Plaintiff first testified that when she left Nash Urgent Care, she went to Wilson to see her sister and went to the emergency room there after continued pain and vomiting. Plaintiff later contradicted that testimony, indicating that she was not visiting her sister, but was riding with a friend and had to go where he went. Instead, plaintiff's friend, Mr. Reid, was going to a store in Wilson, and as he was giving her transportation, she had to ride with him. Plaintiff's testimony that she was so ill that she was unable to walk or see, and that she was vomiting is not credible as her testimony in this matter has been inconsistent.
5. Plaintiff was referred to Dr. Kushner as a result of her treatment at Wilson emergency room on June 10, 2002, the same day Nash Urgent Care released her to return to work. Plaintiff did not return to work until June 19, 2002. Her testimony that she was unable to return as directed because of pain is not found to be credible by the undersigned.
6. Plaintiff continued to make complaints of pain. Nash Healthcare returned plaintiff to work in the discharge office in a light duty capacity on June 19, 2002 to accommodate plaintiff. In that position, plaintiff accepted co-pays from patients and reviewed their paper work to make sure all was in order. She did little if any computer input and was not required to walk. After a short period, plaintiff returned to work in her normal position in the registration office which required her to input data about patients and walk approximately fifty feet to place reports in their proper locations.
7. On July 11, 2002, plaintiff treated with Dr. McAvoy, affiliated with Nash General. Dr. McAvoy conducted objective testing and reviewed her x-rays and CT-scan. He found no objective abnormalities. Dr. McAvoy also returned her to regular work without restriction and indicated that she was at maximum medical improvement with no rating. Plaintiff's employer returned plaintiff to full duty work as of July 18, 2002.
8. Although plaintiff had been released to full duty by Dr. McAvoy, plaintiff continued treatment with neurologist Dr. Kushner. An EMG was performed on August 26, 2002 which revealed swelling in the median nerves of both arms. Plaintiff last treated with Dr. Kushner on September 26, 2002. At that time, plaintiff's headache and neck pain had improved, but plaintiff continued to have complaints suggesting carpal tunnel syndrome. Dr. Kushner referred plaintiff to Dr. Cline, an orthopedic surgeon, to conduct an orthopedic evaluation of her hand and median nerve problems. Plaintiff sought this treatment without authorization from her employer, despite specific instructions that if she needed additional care, it should be requested and scheduled through her employer.
9. Dr. Cline first saw plaintiff on October 7, 2002. Dr. Cline noted plaintiff's carpal tunnel symptoms, and also detected degenerative osteophytes in the cervical spine. He referred plaintiff to a neurosurgeon, Dr. Larry Davidson with Eastern Neurosurgical and Spine Associates, Inc.
10. Dr. Davidson ordered a myelogram on November 1, 2002, and took plaintiff out of work until her next visit. During the next visit on November 22, 2002, Dr. Lee (also with Eastern Neurosurgical and Spine Associates, Inc.) reviewed the myelogram, which revealed no spinal cord compression, no foraminal stenosis, and no evidence of any disc herniation. As a result, Dr. Lee opined that she was not a surgical candidate. Drs. Pajeau, Cline, and Kushner deferred to Dr. Lee's interpretation of the myelogram. Dr. McAvoy did not testify as to the myelogram.
11. The Commission finds that Dr. Lee's interpretation is credible. The Commission also finds as fact that plaintiff did not suffer an injury to her cervical spine as a result of the June 6, 2002 accident.
12. Plaintiff stopped coming to work on November 15, 2002. A letter was forwarded to Ms. Riggins in January 2003 indicating that if she did not respond to the hospital with the appropriate paperwork or advise about returning to work, she would be terminated for job abandonment. Plaintiff did not respond and thus the hospital terminated her for cause.
13. Plaintiff's supervisor, Ms. Messner, testified that light duty work at the discharge desk has been and would still be available for plaintiff, but for her voluntary termination by refusing to respond to defendant's letters asking about her return to work status. Ms. Messner also said that her work in her normal job as a patient registration clerk would also be available, but for plaintiff's termination. Plaintiff has not worked nor looked for work anywhere since November 15, 2002.
14. Plaintiff returned to Dr. Cline on December 19, 2002. Dr. Cline ordered plaintiff out of work until she sought pain management. Plaintiff then saw neurologist, Dr. Aurora Pajeau, for pain management. Dr. Pajeau ordered physical therapy and prescribed medication. She also ordered an EMG and NCV on June 2, 2003, which revealed bilateral carpal tunnel syndrome in the right wrist worse than the left. She then referred plaintiff to Dr. Park for wrist surgery.
15. Dr. Pajeau opined that plaintiff's bilateral carpal tunnel syndrome was not caused by her June 6, 2002 fall. Additionally, Drs. Cline, Kushner, and McAvoy testified that the alleged impact of plaintiff's elbows to the ground is not a physiological cause for the onset of traumatic carpal tunnel syndrome.
16. The Commission finds as fact that plaintiff's bilateral carpal tunnel syndrome was not caused by her June 6, 2002 fall at work.
17. Dr. Pajeau testified that in her opinion, based upon her examination and treatment of plaintiff, that plaintiff was capable of working in her normal job at all times during her treatment of plaintiff. Dr. Cline deferred to Dr. Pajeau with respect to work restrictions.
18. Dr. McAvoy also opined that plaintiff was capable of working without restrictions at all times since her June 6, 2002 fall. The testimony of Dr. McAvoy is deemed credible by the Commission and is given greater weight than the testimony of Dr. Kushner.
19. Based upon the competent medical evidence of record, the Commission finds as fact that plaintiff was not disabled for more than seven days. Plaintiff was capable of earning wages she earned prior to the June 6, 2002 fall, and as such, sustained no period of disability. Suitable work was available to plaintiff at all times, but for plaintiff's refusal to return to work. Further, plaintiff has presented no evidence that she has looked for a job since the injury.
20. Defendants did not file a Form 60 or Form 61 either accepting or denying compensability of the claim. However, the undersigned find as fact that defendants paid for plaintiff's treatment following her compensable injury by accident, and that the parties understood that this was an admittedly compensable claim. Further, the undersigned note that plaintiff's brief to the Full Commission specifically refers to this matter as an admittedly compensable claim. Although this case was initially treated as a "medical only" case, by the actions of defendants it will be treated in the same manner as if a Form 60 had been filed. The undersigned find as fact that defendants acknowledged compensability and liability of the case, although the extent of the compensable consequences remained at issue. Accordingly, the undersigned will treat this matter as if a Form 60 had been filed.
21. Plaintiff failed to request authorization for treatment she sought on her own within a reasonable amount of time.
22. Treatment by Dr. Kushner provided to plaintiff was not reasonably required to effect a cure, provide relief or lessen her disability resulting from her injury.
23. Medical treatment provided by defendants is deemed by the undersigned to be sufficient and defendants shall not be required to pay for additional treatment sought by plaintiff.
24. The Commission finds as fact that plaintiff's termination for failure to respond to defendant's letters was unrelated to her injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In a workers' compensation case, the plaintiff has the burden of proving causation. Holley v. Acts, 357 N.C. 228,231-232, 581 S.E.2d 750, 752 (2003). Where the nature of the injury alleged involves complicated medical questions, only an expert can give competent evidence as to causation. Click v.Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). In this matter, plaintiff has failed to present expert medical testimony that her bilateral carpal tunnel syndrome was caused by her fall, or that she suffered injury to her cervical spine. As such, these conditions are not compensable. Id.
2. Defendants are entitled to direct medical treatment when a claim is accepted as compensable. Kanipe v. Lane Upholstery,141 N.C. App. 620, 624, 540 S.E.2d 785, 788 (2000). If plaintiff is not suffering from disability as defined by the Workers' Compensation Act, defendants can accept liability for medical expenses "through methods other than the filing of these forms."Kanipe, 141 N.C. App. At 625, 540 S.E.2d at 789.
3. As the credible medical evidence shows, plaintiff is able to earn her pre-injury wages, and she has failed to meet her burden in proving disability beyond the seven-day waiting period. N.C. Gen. Stat. §§ 97-2(9), 97-28.
4. Plaintiff unjustifiably refused suitable employment and is not entitled to any disability compensation. N.C. Gen. Stat. §97-32.
5. As defendants failed to file the appropriate forms in this matter, they are subject to sanctions pursuant to Industrial Commission Rule 802(2).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for further workers' compensation benefits associated with her June 6, 2002 accident is DENIED.
2. Defendants shall pay an expert witness fee in the amount of $975.00 to Dr. Pajeau.
3. Defendants shall pay sanctions in the amount of $250.00 by check payable to the North Carolina Industrial Commission and forward to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
4. Defendants shall bear the costs of this action.
This the 30th day of January, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER