***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury.
4. An Employer/Employee relationship existed between the parties at the time of the alleged injury.
5. The Employer in this case is Best Inn and the carrier and/or claims administrator liable on the risk is Auto-Owners Insurance Company.
6. Plaintiff sustained a compensable neck injury on March 29, 2005 while working for Defendant-Employer.
7. The nature of the alleged injury is an injury to the neck.
8. Plaintiff was paid the entire day of the alleged injury.
9. Plaintiff last worked for Best Inn on March 29, 2005.
10. Plaintiff's compensation rate is $200.00 per week.
11. Documents admitted into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Industrial Commission Forms, Motions and Orders, Defendants' Responses to Discovery; Defendants' First Set of Interrogatories to Plaintiff; Plaintiff's Medical Records; Nurse Case Manager Reports
 c. Stipulated Exhibit #3 — Additional nurse case manager reports (submitted post hearing)
 *********** *Page 3 ISSUES
1. Whether Plaintiff's lumbar condition is related to the injury on March 29, 2006?
2. Whether Plaintiff is permanently and totally disabled?
3. Whether Mr. Craig Purcell, a physician's assistant, is an appropriate care provider for Plaintiff's complex pain management treatment?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 55 year old male who worked as a front desk clerk for Employer-Defendant in Sanford, North Carolina.
2. On March 29, 2005, while in the course and scope of his employment with Defendant-Employer, Plaintiff suffered a cervical injury as a result of a slip and fall.
3. Defendants' accepted Plaintiff's claim as compensable pursuant to a Form 60, Employer's Admission of Employee's Right toCompensation, filed on September 30, 2005.
4. Plaintiff has been on Social Security disability since 1996 due to an injury that he incurred in 1990.
5. Prior to the accident on March 29, 2005, Plaintiff had a long history of taking pain medications and was being treated for low back pain.
6. Plaintiff has a history of illicit drug use, including cocaine and marijuana. Plaintiff has used marijuana since his injury by accident.
7. After his injury by accident, Plaintiff began treating with Dr. Zane Walsh for treatment of his injuries. In January 2007, Dr. Walsh discharged Plaintiff from his care because *Page 4 
Plaintiff was non-compliant in his treatment.
8. Dr. Walsh testified to a reasonable degree of medical certainty that Plaintiff did not aggravate his lumbar condition in his work-related fall. Dr. Walsh testified to a reasonable degree of medical certainty that there were no objective changes in Plaintiff's pre-injury and post-injury lumbar MRI.
9. After Plaintiff was discharged from Dr. Walsh's practice, Plaintiff presented to Dr. Rachid Idrissi on October 29, 2007 for treatment of his work-related injuries. Dr. Idrissi treated Plaintiff on a monthly basis until March of 2009 when Plaintiff began to complain of transportation issues and requested a provider closer to his home who could prescribe his pain medications.
10. Plaintiff did not share his history of illicit drug abuse and substance abuse with Dr. Idrissi at his initial evaluation. Dr. Idrissi did not learn of Plaintiff's history of marijuana use until Plaintiff tested positive for THC (tetrahydrocannibinol- the chemical present in marijuana) use on a drug screen in August 2008. Plaintiff never told Dr. Idrissi of his history of cocaine abuse.
11. A patient's drug abuse and substance abuse history is important because such a history makes the patient's case more complex and indicates that the patient needs to be monitored closely.
12. Dr. Idrissi had a narcotics agreement with Plaintiff, which Plaintiff violated when he tested positive for THC in August of 2008 and when he took Oxycodone left over from a prior prescription in August of 2008.
13. After granting Plaintiff's request to see a provider closer to Plaintiff's home for pain medicine prescriptions in March 2009, Dr. Idrissi did not have contact with the provider of *Page 5 
Plaintiff's pain medication prescriptions. Dr. Idrissi did not know who was prescribing Plaintiff's pain medications and knew nothing of Mr. Craig Purcell, the physician's assistant to whom Plaintiff was referred.
14. Dr. Idrissi testified that it was possible that Plaintiff's lumbar condition was aggravated by his work-related fall on March 29, 2005, but he could not provide an accurate opinion regarding the causation of Plaintiff's lumbar condition because he did not know the status of Plaintiff's lumbar condition prior to the fall. Dr. Idrissi ultimately deferred to a physician who saw Plaintiff both before and after the work-related fall, such as Dr. Walsh.
15. Dr. Idrissi indicated that he would be happy to provide pain management care to Plaintiff as long as Plaintiff was compliant in his treatment.
16. Plaintiff presented to Dr. Hernan Jimenez for a consultation regarding his cervical injuries on February 11, 2009. Dr. Jimenez testified that Plaintiff is a complex patient because of his age, his history of treating with multiple physicians without significant pain relief, his extensive history of narcotics use, his history of non-compliance with pain management care, and his failure to be honest with Dr. Jimenez regarding his past narcotics use.
17. Prior to Plaintiff's appointment with Dr. Jimenez, Dr. Jimenez pulled a narcotics inquiry of Plaintiff which indicated that Plaintiff was receiving narcotics from other providers. When Dr. Jimenez questioned Plaintiff at their appointment about receiving other narcotics, Plaintiff initially failed to report the narcotics indicated on the narcotics inquiry.
18. Pursuant to Plaintiff's request to Dr. Idrissi to see a pain management care provider closer to his home, Plaintiff presented to Mr. Craig Purcell, a physician's assistant, in April 2009 for pain management.
19. Mr. Purcell does not have accurate records of the prescriptions he has written *Page 6 
Plaintiff. Mr. Purcell could not tell from his medical notes what he prescribed to Plaintiff in the way of pain medications and on what dates he had prescribed the pain medication. His medical notes do not accurately reflect the medications that Plaintiff was taking at any given time. Mr. Purcell indicated that the only way to obtain accurate records of his prescriptions to Plaintiff was to get the records from Plaintiff's pharmacy.
20. Mr. Purcell did not question Plaintiff about his illicit drug use and did not have a conversation with Plaintiff about his history of drug and substance abuse. Although Mr. Purcell claimed to have ordered urinalysis tests for Plaintiff, the results of the urinalysis were not recorded in Mr. Purcell's medical notes. Mr. Purcell was unable to provide evidence that such urinalysis tests exist.
21. Mr. Purcell testified that he did have a pain contract with Plaintiff but was unable to produce a copy of it. Mr. Purcell did remember that the pain contract required no doctor shopping, no selling of prescribed drugs, use of the drugs as prescribed, and no recreational drug use. Mr. Purcell indicated that a patient must notify his office or see him before making changes to his prescription regimen. According to Mr. Purcell, any patient who abused his prescription drugs would be discharged from his practice or referred to inpatient treatment. Mr. Purcell defined abuse as taking more than prescribed.
22. While treating with Mr. Purcell, on multiple occasions, Plaintiff ran short of his medications prior to his next scheduled appointment, a violation of Plaintiff's alleged pain contract. Mr. Purcell confirmed through his medical records that Plaintiff was experimenting with his pain medications. Mr. Purcell never discharged Plaintiff from his practice and never referred Plaintiff to inpatient treatment. Mr. Purcell continued to prescribe admittedly dangerous medications to Plaintiff, despite Plaintiff's continuous short-cycling of his pain medications and *Page 7 
experimentation with his medications.
23. Mr. Purcell failed to properly monitor Plaintiff's prescription medications. Mr. Purcell did not know where Plaintiff received his Valium prescription referenced in Mr. Purcell's July 23, 2009 medical note. Mr. Purcell admits by his testimony, that his medical notes cause concern and do not accurately reflect what prescriptions he was prescribing Plaintiff.
24. During his deposition, Mr. Purcell did not have his prescribing instructions from his physician and his physician supervisory agreement on-site.
25. Dr. Walsh testified that a physician's assistant, such as Mr. Purcell, who has limited supervision from his supervising medical physician, would not make an appropriate care provider for Plaintiff.
26. Dr. Idrissi testified that Mr. Purcell's medical notes indicated an inappropriate amount of Percocet and Oxycontin being prescribed to Plaintiff in June and July of 2009, indicating drug abuse and mismanagement of Plaintiff's pain. Dr. Idrissi further indicated that Mr. Purcell's practice of allowing Plaintiff to run short of his medication on multiple occasions was not appropriate. Dr. Idrissi testified that Plaintiff needed to be in a system where he is closely monitored.
27. Dr. Jimenez testified that Plaintiff would be best served to receive care in a university-type setting. In order for a physician's assistant to be able to handle Plaintiff's care, there would have to be a substantial amount of communication between the physician's assistant and the supervising physician. A physician's assistant would need to have expertise in managing patients on a regular basis for pain management. Dr. Jimenez expressed deep concern over Mr. Purcell's June and July 2009 medical records due to the excessive amounts of Oxycontin and Percocet that were prescribed to Plaintiff. *Page 8 
28. Even with his additional education, specialization in pain management, and extensive experience in handling patients suffering from chronic pain, Dr. Jimenez still did not feel like he was capable of handling Plaintiff's care, since Plaintiff had failed with other physicians in practices better equipped to handle Plaintiff's care and monitor Plaintiff on a closer basis.
29. Based on the expert testimony of Dr. Walsh, Dr. Idrissi, and Dr. Jimenez, as well as Mr. Purcell's own admissions, the Full Commission finds that Mr. Purcell is not an appropriate care provider for Plaintiff's pain management. Mr. Purcell's medical notes and record keeping system reflect no ability to monitor Plaintiff's prescription drug use. Considering that Plaintiff is taking dangerous medications, Mr. Purcell's failure to perform simple tasks such as keeping accurate medical records, contacting and communicating with his supervising physician, and complying with basic North Carolina laws regarding physicians' assistants indicate that he is not capable of managing the complex pain management treatment of Plaintiff.
30. Defendants are providing transportation to Plaintiff for travel to his medical appointments related to his work-related accident and should continue to do so as necessary.
31. The Full Commission finds Dr. Idrissi to be a more appropriate care provider for Plaintiff's pain management care than Mr. Purcell. Dr. Idrissi has agreed to treat Plaintiff for his pain management. Because Defendants are providing transportation for Plaintiff's appointments and because it is in the best interest of Plaintiff's continuity of care, the Full Commission finds that Dr. Idrissi is the most appropriate care provider for Plaintiff's pain management care.
32. Dr. Walsh testified and the Full Commission finds that Plaintiff's lumbar condition was not related to his work injury. Dr. Idrissi concurred with Dr. Walsh. Based on the testimony of Dr. Idrissi and Dr. Walsh, Plaintiff has failed prove that his lumbar condition is *Page 9 
related to his work-related accident on March 29, 2005.
33. Plaintiff has provided no evidence that he is permanently and totally disabled and, thus, has failed to meet his burden in showing that he is permanently and totally disabled.
34. On May 27, 2009, Executive Secretary Weaver entered an Order compelling Plaintiff to comply with medical treatment, confirming that Dr. Idrissi was Plaintiff's authorized provider for pain management, and advising Plaintiff that his family physician assistant, Mr. Purcell, was not authorized to provide care for Plaintiff's worker's compensation injury.
35. Executive Secretary Weaver ordered Plaintiff to attend all reasonable and necessary appointments with his authorized treating physician and reconfirmed that Dr. Idrissi was Plaintiff's authorized provider for pain management. Executive Secretary Weaver also noted that any further inexcusable no-shows, cancellation of medical appointments, or non-compliance with reasonable medical treatment may result in the loss of future compensation benefits.
36. Plaintiff failed to attend numerous appointments with Dr. Idrissi and Carolina Behavioral Medicine after the May 27, 2009 Order without just cause. Plaintiff's first date of noncompliance was July 15, 2009 when Plaintiff failed to attend an appointment with Dr. Idrissi after Defendants arranged for Plaintiff's transportation to the appointment. As such, Plaintiff's indemnity compensation should be suspended from July 15, 2009 until January 11, 2010, the date Plaintiff appears to have consistently complied with the Order.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. Plaintiff suffered a compensable injury by accident to his neck on March 29, 2005. N.C. Gen. Stat. § 97-2(6).
2. In a workers' compensation claim, the employee has the burden of proving that his claim is compensable. Holley v. Acts,Inc., 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). Although the employment-related accident "need not be the sole causative force to render an injury compensable, the plaintiff must prove that the accident was a causal factor by a preponderance of the evidence.Id. Where the exact nature of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.Young v. Hickory Bus Furn.,353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). Based upon the greater weight of the evidence, Plaintiff has failed to meet his burden of that his lumbar condition is related to his work-related accident. Id.
3. Plaintiff presented no expert testimony that he is permanently and totally disabled. Pursuant to Holley and Young, Plaintiff has failed to prove by a preponderance of the evidence that he is permanently and totally disabled. Supra.
4. An employer's right to direct medical treatment attaches once the employer accepts the claim as compensable. Kanipe v. LaneUpholstery, 141 N.C.App. 620, 624, 540 S.E.2d 785, 788 (2000). Defendants' right to direct medical treatment attached upon their filing of a Form 60 on September 30, 2005. During the course of medical treatment being provided by Defendants, no reason has been shown that Defendants should not be allowed to direct Plaintiff's medical treatment. Therefore, pursuant to Defendants' right to direct medical treatment and the finding that Mr. Purcell is not an appropriate care provider, the Full Commission concludes that Dr. Idrissi shall be Plaintiff's authorized treating physician. *Page 11 
5. The Full Commission finds that Plaintiff failed to attend numerous appointments with Dr. Idrissi and Carolina Behavioral Medicine after the May 27, 2009 Order without just cause. As such, Plaintiff's indemnity compensation shall be hereby suspended from July 15, 2009 until January 11, 2010, the date Plaintiff appears to have consistently complied with the Order. N.C. Gen. Stat. § 97-25 The Defendants are entitled to a credit for all compensation paid during this period. Id.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following:
 AWARD
1. Plaintiff's request to have Mr. Purcell designated as his authorized treating physician is hereby DENIED.
2. Under the North Carolina Workers' Compensation Act, Plaintiff is not entitled to indemnity compensation or medical benefits related to his lumbar condition. Plaintiff's claim for such benefits is hereby DENIED.
3. Under the North Carolina Workers' Compensation Act, Plaintiff is not entitled to compensation for being permanently and totally disabled. Plaintiff's claim for such benefits is hereby DENIED.
4. Plaintiff's indemnity compensation shall be hereby suspended from July 15, 2009 until January 11, 2010, the date Plaintiff appears to have started complying with the May 27, 2009 Order. The Defendants are entitled to a credit for all compensation benefits paid during this period. The May 27, 2009 Order filed by Executive Secretary Weaver remains in full force and effect. Any future non-compliance with the Order shall result in the suspension of indemnity *Page 12 
compensation.
5. Defendants shall pay the costs.
This the __ day of February 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1