***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Defendant-employer was insured by Virginia Surety Insurance Company, (FirstComp Insurance, Third Party Administrator), on March 28, 2007.
3. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. An employment relationship existed between defendant-employer and plaintiff on March 28, 2007, the date of injury.
4. Plaintiff's average weekly wage is $781.11. Plaintiff has been out of work and receiving temporary total disability at a compensation rate of $520.77 since March 28, 2007.
 ***********
The following were received into evidence as:
 STIPULATED EXHIBITS a. The parties' Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. A collection of medical records collectively paginated 1-746 and marked as stipulated exhibit 2a.
 c. A collection of medical records collectively paginated 1-736 and marked as stipulated exhibit 2b.
 d. A collection of documents including Industrial Commission Forms filed in this mater, Nurse Case Management reports, and medical records, collectively paginated 1-93 and marked as stipulated exhibit 3.
 *********** *Page 3 ISSUE PRESENTED
What medical treatment is appropriate for Plaintiff as a result of the March 28, 2007 workplace accident?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDING OF FACTS
1. Plaintiff was 36 years old at the time of the hearing before the Deputy Commissioner. Plaintiff earned a GED and received some training in the heating and air conditioning trade. Plaintiff began his employment with Defendant-Employer, a carpet cleaning and water-damage restoration company, in 2004 or 2005. Plaintiff ran the business and performed physical labor including lifting and moving furniture, performing various demolition tasks, and lifting and carrying wet debris.
2. Although Plaintiff was treated for asthma prior to March 28, 2007, he did not have sleep apnea prior to March 28, 2007. Also, although Plaintiff had some documented instances of elevated blood pressure prior to March 28, 2007, he did not take medication for those conditions prior to March 28, 2007.
3. On or about March 28, 2007, Plaintiff injured his back in an automobile accident while working for Defendant-Employer. Defendants filed an Industrial Commission Form 63 dated May 1, 2007 regarding Plaintiff's claim, reflecting that Plaintiff's disability began on March 29, 2007 and that benefits would commence on May 1, 2007. *Page 4 
4. Plaintiff experienced significant pain following the accident. An MRI of Plaintiff's lumbar spine was performed on April 17, 2007. The MRI revealed, among other things, a "bulging disc at L5-S1with a small posterior annular fissure with no definite focal disc herniation."
5. On May 15, 2007, Plaintiff was seen by Dr. William D. Hunter of the Neuroscience Spine Center of the Carolinas. Dr. Hunter noted in his record of Plaintiff's visit that the April 17, 2007 MRI showed, "abnormality at the L5/S1 region with a disc bulge present." Dr. Hunter discussed with Plaintiff the possibility of surgical intervention, and on July 3, 2007, Plaintiff underwent disc decompression surgery at L4-L5 and L5-S1 performed by Dr. Hunter.
6. On July 18, 2007 Dr. Hunter noted that Plaintiff was no longer experiencing excruciating back and leg pain, and that he was not taking pain medication. However, on October 3, 2007, Dr. Hunter noted that Plaintiff's pain had increased, and he wrote Plaintiff out of work.
6. On November 19, 2007, Plaintiff underwent a selective nerve root block at L4-L5 performed by Dr. Richard Stork. On December 5, 2007, Dr. Hunter noted that Plaintiff felt worse since the nerve root block procedure and recommended that he undergo an epidural injection at the L4-L5 region. On February 20, 2008, Dr. Hunter noted that Plaintiff had a "significant loss of disc space at the L5-S1 level" which he believed was the most likely source of Plaintiff's pain in that area. Dr. Hunter offered Plaintiff further surgical intervention to attempt to remedy this issue.
7. On July 24, 2008, Plaintiff underwent a total disc replacement at the L5-S1 level, performed by Dr. Domagoj Coric.
8. Plaintiff began seeing Dr. Robert J. Sullivan of Southeast Pain Care on October 2, 2008 for pain management. Dr. Sullivan prescribed various pain medications for Plaintiff. At the *Page 5 
time of the hearing before the Deputy Commissioner, Plaintiff was taking OxyContin, Oxycodone, Neurontin, and Zanaflex on a daily basis.
9. In connection with Plaintiff's January 6, 2009 appointment, Dr. Sullivan noted that Plaintiff had an elevated blood pressure reading of 172/87. The note further indicated that "[Plaintiff] was advised and encouraged to keep [tabs on] his blood pressure . . . with his primary care physician at his next appointment." Plaintiff was also given a prescription for aquatic therapy at his January 6, 2009 appointment.
10. On or about January 27, 2009, Plaintiff was attempting to get into the swimming pool at his aquatic therapy session when the top step of the ladder broke, causing Plaintiff to fall straight-legged to the bottom of the pool, jarring his back. This incident is documented in the medical record from Plaintiff's February 3, 2009 appointment at Southeast Pain Care which reads, "We will stop physical therapy for now in light of the recent incidents." The aquatic therapy facility where Plaintiff fell apparently does not want Plaintiff to return.
11. Plaintiff's wife has worked outside of the home following Plaintiff's injury by accident. This has resulted in Plaintiff having increased childcare obligations. As a result of those increased obligations, Plaintiff can only attend therapy sessions in the morning in the North Charlotte or Lake Norman areas.
12. Plaintiff underwent a spinal cord stimulator trial beginning on July 20, 2009. Thereafter, Dr. Sullivan recommended placement of a permanent spinal cord stimulator and referred Plaintiff to Dr. Joe D. Bernard, Jr. for that purpose. On September 2, 2009, Dr. Bernard surgically placed the leads for a permanent spinal cord stimulator. The permanent spinal cord stimulator leads did not give Plaintiff the same relief that he experienced during the trial. *Page 6 
Furthermore, Plaintiff experienced significant pain in his chest wall when the stimulator was activated.
13. On September 9, 2009, Plaintiff presented to Dr. Bruce Mather of Lakeside Family Physicians for significantly elevated blood pressure. Dr. Mather noted in his record from that visit, "Clearly, [Plaintiff] did not have significant blood pressure elevations in his prior history. I do think his chronic pain may be contributing to some of his elevated blood pressure readings." Dr. Mather prescribed Lisinopril for Plaintiff's blood pressure condition. Dr. Mather also noted, "there has [sic] been concerns of possible sleep apnea," as well as Plaintiff's "weight issues."
14. On August 24, 2010, Plaintiff presented to Dr. Richard B. Thoma of Southeast Pain Clinic. In the medical record from that date, Dr. Thoma states, "[Plaintiff] is interested in pursuing repeat spinal cord stimulation. He reports that he is waiting to hear on that. I do believe there is merit in him having that system placed."
15. Dr. Mather was deposed subsequent to the hearing before the Deputy Commissioner. He testified that, Plaintiff's weight increased from 307 pounds on April 17, 2007, to 319 pounds on July 14, 2008, to 325 pounds in September of 2009, and to 344 pounds as of Dr. Mather's most recent appointment with Plaintiff. Dr. Mather opined that Plaintiff's inactivity due to pain had "definitely contributed to his weight gain."
16. Dr. Mather testified that, as of April 2, 2007, Plaintiff had normal blood pressure and had no problems with sleep apnea. Dr. Mather could not testify with any certainty that Plaintiff's elevated blood pressure and sleep apnea were caused by Plaintiff's chronic pain or weight gain.
17. Dr. Sullivan was deposed subsequent to the hearing. He testified that Plaintiff's elevated blood pressure and sleep apnea could be related to Plaintiff's work injury. Regarding a *Page 7 
possible additional spinal cord stimulator for Plaintiff, Dr. Sullivan testified that Plaintiff should be seen by Dr. Rauck for evaluation and guidance.
18. Dr. Hans Hansen, who performed a second opinion evaluation of Plaintiff, was deposed subsequent to the hearing. Dr. Hansen testified: "I do not believe that another attempt to spinal cord stimulation would probably be in his best interest."
19. Judith M. Clouse, a nurse consultant with the North Carolina Industrial Commission, was deposed subsequent to the hearing. Nurse Clouse testified that Plaintiff was cooperative and had not been rude to her. Nurse Clouse also testified that she was aware that Plaintiff experienced problems in his dealings with case manager Deborah Redfern.
20. The Full Commission gives greater weight to the opinions of Dr. Sullivan and Dr. Mather than to those of Dr. Hansen based on the fact that both Dr. Sullivan and Dr. Mather actually treated Plaintiff while Dr. Hansen did not.
21. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that Dr. Sullivan is the best physician to direct Plaintiff's care at this time. Plaintiff's treatment, as directed by Dr. Sullivan, is reasonably calculated to provide relief from Plaintiff's compensable conditions.
22. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that an evaluation for a spinal cord stimulator with Dr. Richard Rauck is reasonably necessary to provide relief from Plaintiff's compensable conditions.
23. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that Plaintiff would benefit from aquatic therapy to be conducted during morning sessions in the North Charlotte or Lake Norman areas which are closer to Plaintiff's home than the downtown Charlotte location he has been attending. *Page 8 
24. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that as a result of Plaintiff's March 28, 2007 injury, Plaintiff has been temporarily totally disabled and therefore unable to earn any wages in any employment from March 29, 2007 and continuing.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about March 28, 2007, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer when he was involved in a motor vehicle accident. N.C. Gen. Stat. § 97-2 (6).
2. In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of *Page 9 
showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v.Perdue Farms., Inc., supra.
3. In the instant case, Plaintiff met his initial burden to show that he was disabled by the production of medical evidence that he is physically or mentally, as a consequence of his work-related injury, incapable of work in any employment, and has been so disabled since his March 28, 2007 work-related accident.Russell v. Lowes Product Distribution, supra.
4. As the result of his admittedly compensable March 258 2007 injury by accident, Plaintiff was totally disabled and is entitled to have Defendants pay to him total disability compensation at the rate of $520.77 per week for the period from March 29, 2007 and continuing until Plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Under the law, Plaintiff's sleep apnea, blood pressure, and weight gain conditions can be found compensable if they are proven to be a "direct and natural result" of the original compensable injury. Vandiford v. Stewart Equip. Co.,98 N.C. App. 458, 461, 391 S.E.2d 193, 195 (1990) (citingStarr v. Charlotte Paper Co.,8 N.C. App. 604, 610, 175 S.E.2d 342, 347 (1970)). There is insufficient evidence in the current record to determine whether Plaintiff's elevated blood pressure, sleep apnea and weight gain are the direct and natural result of his March 28, 2007 work-related injury.
6. Plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the March 28, 2007 compensable accident, when bills for the same have been approved pursuant to Industrial Commission procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25. This shall include aquatic therapy to be conducted during morning sessions in the North *Page 10 
Charlotte or Lake Norman areas which are closer to Plaintiff's home than the downtown Charlotte location he has been attending. The medical treatment to which Plaintiff is entitled shall also include an evaluation with Dr. Rauck, and a repeat spinal cord stimulator procedure, if said procedure is recommended.
7. As set forth above, there is insufficient evidence in the current record to determine whether Plaintiff is elevated blood pressure, sleep apnea and weight gain are the direct and natural result of his work related injury. Therefore, Plaintiff is not currently entitled to medical treatment for those conditions.Vandiford v. Stewart Equip. Co.,98 N.C. App. 458, 461, 391 S.E.2d 193, 195 (1990) (citingStarr v. Charlotte Paper Co.,8 N.C. App. 604, 610, 175 S.E.2d 342, 347 (1970)).
8. Given the facts of this case, an Industrial Commission Nurse shall be assigned to oversee Plaintiff's medical and rehabilitative treatment and to provide any assistance required by the parties. N.C. Gen. Stat. § 97-25.
9. Generally defendants have the right to direct medical care once they accept a claim as compensable. This right to direct medical care normally includes the right to select the treating physician. N.C. Gen. Stat. § 97-25; Schofield v. Tea Co.,299 N.C. 582 (1980); Anita Thompson v. Federal ExpressGround, 175 N.C. App. 564 (2006); Kanipe v. LaneUpholstery, *Page 11 141 N.C. App. 620 (2000). Defendants are not required to pay for treatment provided by an unauthorized physician in an accepted case unless the scenario involves a recognized exception. These exceptions are: 1) lack of prompt medical direction by defendants, 2) an emergency, or 3) Commission approval. N.C. Gen. Stat. § 97-25; Schofield v. Tea Co.,299 N.C. 582 (1980); Anita Thompson v. Federal ExpressGround, 175 N.C. App. 564 (2006); Kanipe v. LaneUpholstery, 141 N.C. App. 620 (2000). The case at hand involves a recognized exception, as plaintiff properly seeks Commission approval for a change of treating physician.
10. The North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by defendant. Furthermore, the Industrial Commission "may at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. In Kanipe v. Lane Upholstery,141 N.C. App. 620 (2000), the North Carolina Court of Appeals explains that "[a]pproval of an employee-selected physician is left to the sound discretion of the Commission." Id. at 626. Given the circumstances of this case, it is best that Dr. Sullivan is the authorized treating physician to direct Plaintiff's medical treatment going forward. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $520.77 per week during the period beginning March 29, 2007 and continuing until Plaintiff returns to work or further Order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall provide for all medical treatment incurred or to be incurred as a result of the March 28, 2007 accident. This shall include aquatic therapy to be conducted during *Page 12 
morning sessions in the North Charlotte or Lake Norman areas which are closer to Plaintiff's home than the downtown Charlotte location he has been attending.
3. Defendants shall authorize and pay for an evaluation with Dr. Rauck for a possible repeat spinal cord stimulator procedure. Defendants shall comply with Dr. Rauck's recommendation.
4. Dr. Sullivan is hereby designated as Plaintiff's treating physician. Plaintiff shall comply with treatment recommended by Dr. Sullivan.
5. The record is hereby reopened for an evaluation by Dr. Sullivan to determine whether Plaintiff's elevated blood pressure, sleep apnea, and weight gain are related to his original injury. The parties shall have forty-five (45) days from the date of this Opinion and Award to complete the evaluation. Additional evidence and supplemental briefs shall be submitted to Commissioner Cheatham. The Full Commission retains jurisdiction of this case, and upon receipt of the additional evidence, the Full Commission will render a decision on this issue.
6. An Industrial Commission Nurse is hereby assigned to oversee Plaintiff's medical and rehabilitative treatment and to provide any assistance required by the parties.
7. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under Paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: 25% of any lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's counsel shall receive every fourth compensation check due Plaintiff.
8. Defendants shall pay the costs.
This the ___ day of July, 2011. *Page 13 
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1